IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                  Case No. 18-CR-2846 MV

RAYMOND LOPEZ, JR.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Raymond Lopez Jr.'s ("Mr. Lopez's") Motion for Compassionate Release. Doc. 50. The government filed a response [Doc. 51] and Mr. Lopez filed a reply [Doc. 54]. The parties then filed supplemental briefing [Docs. 56, 57] at the Court's request [Doc. 55]. Having considered the briefing, relevant law, and being otherwise fully informed, the Court finds that Mr. Lopez's motion is well taken and will be **GRANTED**. Exercising its authority to modify Mr. Lopez's sentence for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i), the Court will reduce his term of imprisonment to time served and place him in home confinement for the approximately nine months remaining on his custodial sentence.

### BACKGROUND

This case began with Mr. Lopez's arrest on August 1, 2018. *See* Doc. 2. On March 6, 2019, he pled guilty to Counts 1 and 2 of a five-count Indictment charging him with Distribution of Oxycodone and Distribution of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *See* Doc. 33 at ¶ 3. He also pled guilty to Counts 1, 2, and 3 of a three-count Information again charging him with Distribution of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

*See id*. The charges arose from Mr. Lopez's unlawful sale of fentanyl and oxycodone pills to an undercover agent with the Drug Enforcement Agency (DEA) on five occasions in the spring of 2018. *See id*. at ¶¶ 6–23; *see also* Docs. 14, 29.

On November 14, 2019, the Court sentenced Mr. Lopez to 36 months of imprisonment in the Bureau of Prisons (BOP) on each of the five counts, to run concurrently, followed by three years of supervised release.[1] *See* Doc. 49 at 3–4. He was never transferred to a BOP facility, however, and is instead serving his sentence at the Otero County Correctional Facility in Chapparal, New Mexico, where, as the Court will describe below, there are now signs of an emerging COVID-19 outbreak. *See* Doc. 50 at 1. Because Mr. Lopez spent over 15 months in custody prior to sentencing [Doc. 33 at 2], he is currently expected to be released on February 19, 2021 [Doc. 50 at 1]. He now moves the Court to reduce his term of imprisonment to time served under 18 U.S.C. § 3582(c)(1)(A)(i) due to his underlying health conditions and "the threat that COVID-19 poses to his well-being" at Otero County. *See* Doc. 50 at 1.

## STANDARD

Under 18 U.S.C. § 3582(c)(1)(A)(i), federal courts are permitted to reduce a defendant's term of imprisonment and/or modify their conditions of supervised release if, after a consideration of the factors set forth in 18 U.S.C. § 3553(a), "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Prior to the passage of the First Step Act of 2018, only the director of the BOP could move for a reduction under the statute, leaving federal prisoners powerless to apply for compassionate release on their own behalf. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). However, in a section of the Act titled "Increasing

---

[1] The Court also imposed its sentence to run concurrent to any terms of imprisonment to be imposed in two state cases in which Mr. Lopez had pending probation revocation hearings. *See* Doc. 49 at 3, Doc. 33 at ¶¶ 60–61. The Court understands that those revocation hearings are still pending.

2

the Use and Transparency of Compassionate Release," Congress amended the law to allow defendants to move for sentence reductions under § 3582(c)(1)(A)(i) once they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

Since the passage of the First Step Act, courts have disagreed about what constitutes "extraordinary and compelling reasons" warranting relief. Some courts continue to look to a policy statement from the United States Sentencing Commission listing several circumstances in which "extraordinary and compelling reasons" exist, including where the defendant is suffering from a terminal illness or a "serious physical or medical condition… that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See, e.g., United States v. Willis*, 382 F. Supp. 3d 1185, 1187–88 (D.N.M. 2019) (applying U.S.S.G. § 1B1.13); *United States v. Gutierrez*, No. 05-CR-0217 RB, 2019 WL 1472320, at *2 (D.N.M. Apr. 3, 2019) (unreported) (same). The policy statement also limits relief to those defendants who are "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* U.S.S.G. § 1B1.13(2).

Other courts have held that because the policy statement in question predates the First Step Act and refers only to motions brought by the director of the BOP, it is no longer an "applicable policy statement" that courts must consider under § 3582(c)(1)(A) and should not therefore limit the meaning of "extraordinary and compelling reasons" warranting relief. *See, e.g., United States v. Brown*, 411 F. Supp. 3d. 446, 449–51 (S.D. Iowa 2019) (listing cases). Although the Tenth Circuit has yet to resolve this issue definitively, it recently applied the policy statement in an unpublished opinion analyzing a motion for a sentence reduction under § 3582(c)(1)(A). *See*

*United States v. Saldana*, 2020 WL 1486892, at *2 (10th Cir. Mar. 26, 2020) (unpublished).

Despite their disagreements about the precise definition of "extraordinary and compelling reasons" justifying compassionate release, many courts over the past two months have agreed that such reasons exist in cases involving defendants whose serious underlying health conditions place them at an elevated risk of infection and death from COVID-19 while in custody. *See United States v. McCarthy*, No. 3:92-CR-0070 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (unreported) (listing cases releasing defendants with risk factors for COVID-19, including asthma, diabetes, and compromised immune systems). Some courts have based their finding on the Sentencing Commission's catch-all provision for "other" extraordinary and compelling reasons in Application Note 1(D) to U.S.S.G. § 1B1.13. *See, e.g., United States v. Gonzalez*, No. 2:18-CR-02323-TOR-15, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (unreported). Other courts have done so under a plain reading of § 3582(c)(1)(A) after concluding that the policy statement no longer applies. *See, e.g., United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1, 6 (E.D. Pa. Apr. 1, 2020) (unreported) (stating that, for the defendant, "nothing could be more extraordinary and compelling than this pandemic."). Still other courts, including some in the Tenth Circuit, have expressed concerns about prisoner safety during the COVID-19 pandemic but have denied requests for compassionate release due to the defendants' failure to exhaust their administrative remedies within the BOP. *See, e.g., United States v. Walker*, No. 13-CR-10051-EFM, 2020 WL 2101369, at *2 (D. Kan. May 1, 2020) (unreported).

## DISCUSSION

Before addressing the merits of Mr. Lopez's motion, the Court first notes that he is eligible to apply for relief in this Court because he has "fully exhausted all administrative rights" to apply for compassionate release within the BOP under § 3582(c)(1)(A). The reason for administrative

exhaustion here is straightforward: because Mr. Lopez is not in federal custody, he is unable to apply for compassionate release through the BOP's normal administrative process. *See* Doc. 56 Ex. 1 (email from BOP regional counsel advising defense counsel in this case that he is "not aware of any means that a warden at a county jail facility would have to act on a compassionate release request"); Ex. 2 (letter from the United States Attorney's Office for the District of New Jersey conceding that a defendant in a different case had exhausted his administrative remedies because he could not apply for compassionate release while in local custody). The government has additionally represented that because the BOP is not currently moving inmates between facilities, it has "no active plans [to move Mr. Lopez] to a federal BOP facility." *See* Doc. 57 at 1. Both parties accordingly agree that because Mr. Lopez has no way to apply to compassionate release through the BOP, he has satisfied § 3582(c)(1)(A)'s exhaustion requirement and is eligible to apply for relief in this Court. *See id*. at 2, Doc. 56 at 4.

On the merits, Mr. Lopez argues that his age and underlying health conditions, when combined with his increased risk of exposure to COVID-19 in custody, provide extraordinary and compelling reasons to grant him compassionate release. *See generally* Doc. 50. He points to the fact that he is 62 years old and suffers from high blood pressure and type II diabetes, the latter of which required the amputation of two of his toes and part of his left leg. *See* Doc. 33 at ¶¶ 113–115, Doc. 50 at 2, Doc. 54 at 7. He then argues that both of these conditions put him at an elevated risk of infection and death from COVID-19, pointing to a statement from the American Diabetes Association that diabetic individuals in China "had much higher rates of serious complications and death [from COVID-19] than people without diabetes" and a study from the Centers for Disease Control (CDC) which found that 50 percent of individuals with underlying conditions hospitalized for COVID-19 had high blood pressure. *See* Doc. 54 at 6–7 (citations omitted). Mr. Lopez further

argues that his risk of contracting COVID-19 is greatly increased by his continued incarceration because "[c]onditions of imprisonment create the ideal environment for the transmission of contagious diseases." *Id*. at 10.  In support, he attaches a "Declaration for Persons in Detention and Detention Staff" from Chris Breyer, M.D., MPH, a Professor of Epidemiology at the Johns Hopkins Bloomberg School of Public Health, which states among other things that it is "an urgent priority in this time of national public health emergency to reduce the number of persons in detention as quickly as possible." Doc. 54 Ex. 1 at 3.

In response, the government argues that while underlying medical conditions that raise a defendant's risk of serious illness from COVID-19 "may satisfy the standard of 'extraordinary and compelling reasons'" in some cases, Mr. Lopez's conditions in this case are not so severe as to meet the Sentencing Commission's definition of that term.  *See* Doc. 51 at 20.  The government also points out in its response that the staff at Otero County have adopted safety precautions to guard against the spread of COVID-19 and that, as of the time of filing on April 23, 2020, the facility had not detected any cases of the virus among its 1,140 inmates.  *See id*. at 5.  In its more recent response to the Court's request for supplemental briefing filed on May 7, however, the government acknowledges that one staff member and one female inmate at Otero County had tested positive since its earlier filing.  *See* Doc. 57 at 2.  The Court has subsequently been informed by the United States Marshals Service that at least four female inmates at Otero County have now tested positive for COVID-19 and that several male inmates are also being tested for the virus after exhibiting symptoms.

The Court finds that Mr. Lopez's age and underlying health conditions, which put him at a significantly increased risk of serious illness or even death from COVID-19, constitute "extraordinary and compelling reasons" warranting his compassionate release under §

3582(c)(1)(A) when combined with what appears to be an emerging outbreak of the virus at the facility in which he is presently incarcerated. The severity of Mr. Lopez's health conditions is apparent from his presentence report, which describes how Mr. Lopez's diabetes has already led to the amputation of two of his toes, which in turn led to complications resulting in the amputation of part of his left leg. *See* Doc. 33 at ¶ 115. The presentence report additionally notes that Mr. Lopez's father died of complications from diabetes at the age of 63, just one year older than Mr. Lopez is today. *See id*. at ¶ 89.

The seriousness of the risk that Mr. Lopez faces from COVID-19 is also apparent. The emerging outbreak at Otero County is consistent with the concerns expressed by public health officials like Dr. Breyer about the difficulty of implementing effective preventative measures like social distancing in a prison environment [*see* Doc. 54 Ex. 1], concerns that have been proven to be more than justified over the past few months. The BOP now reports that 3,379 federal inmates and 250 staff have tested positive for COVID-19 at 51 federal facilities and 22 residential reentry centers across the country, numbers that do not appear to include federal inmates like Mr. Lopez who are currently housed at state and local facilities. *See* COVID-19 Cases, Federal Bureau of Prisons, available at https://www.bop.gov/coronavirus/ (last accessed on May 12, 2020). Tragically, 49 federal inmates have died from the virus so far. *See id*.

The Court finds that these unprecedented circumstances give rise to "extraordinary and compelling reasons" for compassionate release in the case of a defendant like Mr. Lopez, whose age and serious underlying health conditions put him at an increased risk of severe illness or death from COVID-19. *See* § 3582(c)(1)(A). To the extent that the Sentencing Commission's policy statement is still binding, the Court agrees with its counterpart in the Eastern District of Washington that the present circumstances constitute "other" extraordinary and compelling

7

reasons for compassionate release under the catch-all provision in Application Note 1(D).  *See Gonzalez*, 2020 WL 1536155, at *2.  Mr. Lopez's underlying conditions also constitute "serious physical or medical condition[s]" that "substantially diminish[] [his] ability… to provide self-care within the environment of a correctional facility" because they compromise his ability to effectively defend himself against infection and resulting complications if he is exposed to COVID-19.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).  And to the extent that the Sentencing Commission's policy statement is no longer applicable, the Court finds that Mr. Lopez's present situation constitutes "extraordinary and compelling reasons" for compassionate release within the plain meaning of § 3528(c)(1)(A).  *See Rodriguez*, 2020 WL 1627331, at *1.

The Court further finds that reducing Mr. Lopez's term of imprisonment to time served and ordering that he spend the approximately nine months remaining on his custodial sentence in home confinement is supported by the factors set forth in 18 U.S.C. § 3553(a).  The offense in this case was undoubtedly serious: Mr. Lopez's distribution of oxycodone and fentanyl pills endangered the community at a time when the country was facing a crisis of opioid addiction, overdose, and death.  The Court also remains troubled by Mr. Lopez's lengthy history of offenses which resulted in a criminal history category of V, the second highest criminal history category under the Guidelines.  *See* Doc. 33 at ¶¶ 45–64.  However, the Court ultimately believes that keeping Mr. Lopez incarcerated in Otero County for the final nine months of his sentence, a portion of which he will likely spend in quarantine as the facility works to contain the spread of COVID-19, would fail to meaningfully advance the purposes of sentencing.  Instead, the Court believes that placing Mr. Lopez in home confinement for the same time period will continue to impose just punishment for his offenses by restricting his liberty while also reducing the risk to his health posed by COVID-19, a risk that the Court did not anticipate and to which it certainly did not intend to expose Mr.

Lopez when it sentenced him in November of last year.

Finally, the Court finds that Mr. Lopez's compassionate release will not pose a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* U.S.S.G. § 1B1.13(2). To ensure Mr. Lopez's compliance with the imposed period of home confinement, the Court will place him on location monitoring. Because home confinement is considered a special condition of supervised release, Mr. Lopez will also be under the supervision of United States Probation Office and this Court will retain the ability to place him back into custody in the event that he violates any of the conditions of his supervised release. *See* 18 U.S.C. § 3583(e)(3).

## CONCLUSION

For the reasons stated above, Mr. Lopez's Motion for Compassionate Release [Doc. 50] is hereby **GRANTED**. Exercising its authority under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, the Court will reduce Mr. Lopez's term of imprisonment to time served and modify his conditions of supervised release to include nine months of home detention with location monitoring using RF technology, at his mother's residence. An amended judgment reflecting Mr. Lopez's modified sentence and conditions of supervised release will be forthcoming.

ENTERED this 14th day of May, 2020.

The Honorable MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE